UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TAMMY ANDREWS,<br><br>Plaintiff,<br><br>v.<br><br>STATE OF IDAHO, DEPARTMENT OF PARKS AND RECREATION,<br><br>Defendant. | Case No. 1:25-cv-00041-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant State of Idaho, Department of Parks and Recreation's motion to compel a Rule 35 examination of Plaintiff Tammy Andrews. (Dkt. 25). For the reasons below, the Court grants the motion.

## BACKGROUND

Andrews, a former employee of the Department, alleges in part that it violated the Civil Rights Act and the Idaho Human Rights Act by failing to take any timely action to rectify the sexual harassment perpetrated by her supervisor, resulting in her constructive discharge. *See* Compl. (Dkt. 1).

Andrews, from the outset of this case, has alleged that she "suffered and will continue to suffer loss of earnings, benefits, and job opportunities, as well as

emotional distress consisting of outrage, shock, and humiliation." *Id*. at ¶¶ 45, 52. Andrews has retained an expert, clinical psychologist Aaron A. Harris, PhD., who conducted two clinical interviews with Andrews, reviewed her mental health records, and administered neuropsychological testing and interpreted the results. Decl. of Pam S. Howland, Ex. A (Dkt. 25-1 at 10). Dr. Harris diagnosed Andrews with posttraumatic stress disorder, chronic; anxiety disorder, severe; and depressive disorder, recurrent. *Id*. at 20. He also noted a potential diagnosis of alcohol abuse and indications of attention-deficit/hyperactivity disorder. *Id*.

As detailed by the Court in its September 4, 2026, Order (Dkt. 30), the Department retained Camille LaCroix, MD, DLFAPA, DABPN, DNBPAS, as an expert in early July 2026. The Department's expert disclosure deadline was July 23, 2026. At the time she was retained, Dr. LaCroix required eight weeks to conduct an independent medical examination and draft a report.

On July 22, 2026, the Department moved for the Court to amend the scheduling order. *See* Def.'s Mot. to Am. Scheduling Order (Dkt. 23). During the pendency of that motion, the Department also filed this motion to compel a Rule 35 examination. The Court ultimately found good cause to amend the scheduling order and continued the remaining deadlines indefinitely pending resolution of this

motion.[1] The Court opted not to set deadlines at that time because the outcome of this motion would necessarily influence when those deadlines should be set.

In a declaration in support of the Department's motion, Dr. LaCroix indicated that a review of Andrews' records alone would be insufficient for her to formulate complete and reliable opinions with reasonable medical certainty. Decl. of Camille LaCroix, MD (Dkt. 25-2 at ¶ 6). Dr. LaCroix also stated that Andrews had produced some records, but none of the records precede the events at issue in this case. *Id*. at ¶¶ 8-10. Therefore, an examination is warranted. *Id*. at ¶¶ 7, 11.

Dr. LaCroix intends to conduct her examination in one sitting, ideally at her office in Boise, Idaho. *Id*. at ¶ 12. "The evaluation will consist of a clinical interview, medical status examination, and such screening instruments and standardized psychological testing as [Dr. LaCroix determines] are professionally appropriate based upon [her evaluation of Andrews]." *Id*. Dr. LaCroix anticipates that the interview portion of the examination will last approximately four hours. *Id*. at ¶ 13. This estimate does not include the time needed to administer any testing instruments, though Dr. LaCroix believes that administration of those should not take a significant amount of time. *Id*. at ¶ 13.

## LEGAL STANDARD

[1] Both parties have filed motions to compel, and the Department has also filed a motion to strike. *See* Dkts. 35-37. The Court will therefore wait to issue an order regarding scheduling until those are resolved.

The Court may order a party whose mental or physical condition is in controversy to submit to an examination by a suitably licensed or certified examiner. Fed. R. Civ. P. 35(a)(1). The moving party must establish that the party's physical or mental condition is "in controversy," and that good cause exists for the examination. *Schlagenhauf v. Holder*, 379 U.S. 104, 118-19 (1964). The movant "must affirmatively show each condition as to which examination is sought is 'really and genuinely in controversy and that good cause exists for ordering each particular examination.'" *Champine v. Ryan*, 2026 WL 1954444 at *1 (D. Idaho July 6, 2026).

"'Good cause' generally requires a showing of specific facts justifying discovery." *Crossley v. Wed Ada School District #2*, 2025 WL 622243 at *2 (D. Idaho Feb. 25, 2025). Factors that Courts have considered include the possibility of obtaining information by other means, whether the plaintiff plans to prove their claim through expert testimony, whether the desired materials are relevant, and whether the plaintiff is claiming ongoing emotional distress. *Id*.

Even if the movant demonstrates good cause, whether an examination should be ordered is a discretionary decision by the Court. *Carbajal v. Hayes Mgmt. Service, Inc.*, 343 F.R.D. 192, 196 (D. Idaho 2022) (citations omitted). Rule 35 is to be construed liberally to allow examination; however, the Court must

balance the interest of the movant's right to a fair trial with the privacy interest of the party to be examined. *Id*.

## ANALYSIS

### 1. The Department has Demonstrated Good Cause

The parties agree that Andrews' mental condition is squarely in controversy here. The question, then, is whether good cause exists for the examination.

Andrews, who had to respond the Department's motion without the benefit of the Court's September 4, 2026 Order, argues primarily that this motion is inexorably tied to the Department's motion to amend, and therefore the predicate lack of diligence by the Department in retaining an expert makes it impossible for it to demonstrate good cause here. Andrews also argues that the Department already possesses Andrews' medical and mental health records, as well as Dr. Harris' report, data, and underlying materials, and has failed to demonstrate that the information sought cannot be obtained through those less intrusive means.

While the Department may have at least some of Andrews' records, as well as Dr. Harris' report and underlying materials, there is an unavoidable asymmetry of information that would be created if Dr. Harris was permitted to conduct clinical interviews and administer neuropsychological testing, while Dr. LaCroix is prohibited from doing so. The Court is not casting any aspersion on the abilities, reasoning, or conclusions of Dr. Harris. However, any opinion that Dr. LaCriox

may form by relying on the data collected and report authored by Dr. Harris is necessarily derivative. Therefore, any opinion formed by Dr. LaCroix would be constrained by, and dependent upon, that closed universe of information collected and opinions formed by Dr. Harris. An examination pursuant to Rule 35 is an appropriate mechanism for the Department to obtain the information it seeks.[2]

Additionally, Dr. Harris' expert testimony will comprise a significant portion of Andrews' damages claims. Andrews alleges that she has suffered, and will continue to suffer, "loss of earnings, benefits, and job opportunities, as well as emotional distress consisting of outrage, shock, and humiliation." Dkt. 1 at ¶¶ 45, 52. Though not her sole claim for damages, her emotional distress allegations are a key part of her suit. Thus, the Court views permitting an examination as important to ensure a comprehensive presentation of both parties' respective cases.

Finally, the Court finds that balancing each party's interest favors the Department. Andrews' allegations necessarily require the litigation of her psychological state. She has undergone a comprehensive examination by her expert, Dr. Harris, which included two clinical interviews and neuropsychological testing. Therefore, ensuring fair footing for the Department carries greater weight than Andrews' privacy expectation when litigating her claims necessarily requires

[2] The Court omits discussion on the records produced by Andrews because the scope of the records that the Department is entitled to in discovery is in dispute, and the Department has moved to compel the production of more of Andrews' records. *See* Dkt. 37.

intrusion upon her privacy.

**2. The Court will Order Andrews to Attend the Examination at Dr. LaCroix's Office in Boise Without a Third-Party Observer or Recording Device**

Andrews also requests that, if the Court orders an examination, it either be remote, or Dr. LaCroix travel to Andrews. Andrews further requests a third party be allowed to attend, or a recording be made.

The majority of district courts exclude third party observers, as well as any form of recording. *See Flack v. Nutribullet, L.L.C.*, 333 F.R.D. 508, 517-18 (C.D. Cal. 2019). This policy exists for numerous reasons—the presence of a third party (or recording device) changes the nature of the proceeding, contributes an additional element that may impede the accuracy and propriety of the examination, and may inject an adversarial disposition into the examination. *Id*. at 518. "Third party observers may, regardless of their good intentions, contaminate a mental examination." *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 609-10 (C.D. Cal. 1995).

Courts may permit a third-party observer or recording device if the party requesting the accommodations can provide the Court with good cause. *See Flack*, 33 F.R.D. at 517. This is a case-specific factual consideration. *Id*. Courts have acknowledged that a third-party observer may be warranted where there is fear that the examiner will improperly conduct the examination to obtain admissions or

other damaging concessions from the examinee, that the examiner will use unsound or harmful techniques, and that there is a need for emotional support or comfort. *Id*. at 518. However, the existence of one or more of these factors is not dispositive of whether an observer or recording device is appropriate. *Id*.

The Court is mindful of Andrews' reported symptoms and panic attacks and recognizes that the examination may be stressful. Those concerns, however, do not by themselves establish good cause for an observer or recording device, particularly considering the possible complications that their presence may create. Because Andrews has not demonstrated the necessity of a third person or a recording device, the Court will order Andrews to attend the examination without either.

The Court also will order that Andrews travel to Dr. LaCroix's office for the examination. Andrews bears the burden of showing that she cannot travel to the examination. *See Prado v. Cnty. of Siskiyou*, 2009 WL 1657537 at *2-3 (E.D. Cal. June 12, 2009). She has not done so. Ordering that the examination take place at Dr. LaCroix's office is also preferable because of practical considerations. Dr. LaCroix's office is an already-established setting that avoids the need to secure and prepare another location, transport whatever materials may be needed, and otherwise coordinate additional logistical factors that could potentially delay or disrupt the examination. *See Ornelas v. Southern Tire Mart, LLC*, 292 F.R.D. 388,

400 (S.D. Texas 2013) ("[T]he facilities and equipment and examiner needs are likely at his place of practice."). The Court therefore considers Dr. LaCroix's office as the preferrable location for the examination.

## ORDER

**IT IS ORDERED that:**

1. Defendant's Rule 35 Motion for Medical Examination (Dkt. 25) is **GRANTED**.

a. Plaintiff Tammy Andrews will be subject to a psychiatric examination within sixty (60) days of this order. The parties shall file a joint status report within two (2) weeks of the entry of this order informing the Court of the date and time that the examination shall occur.

b. The examination will take place at 913 W. River Street, Ste. 440, Boise, Idaho 83702.

c. The examination shall be conducted by Camille LaCroix, MD, DLFAPA, DABPN, DNBPAS.

d. No third party shall observe the examination, nor shall any audio or video recording of the examination be made.

e. All procedures and components of the examination shall be conducted in accordance with relevant medical standards and shall comport with the evidence-based guidelines for Forensic Psychiatric Evaluations.

f. The scope of the examination is limited to matters relevant to

Andrews' allegations of emotional distress and the subjects addressed in Dr. Harris' report. The Department shall provide Andrews with information regarding any specific testing instruments that Dr. LaCroix intends to administer two (2) weeks prior to the date of the examination. Andrews may file an objection to those specific instruments no later than one (1) week before the date of the examination.

DATED: October 13, 2026

B. Lynn Winmill
U.S. District Court Judge